**Opinion issued January 22, 2026**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-25-00787-CV

_____

## IN RE KEVIN HENRY, Relator

---

## Original Proceeding on Petition for Writ of Habeas Corpus

---

## MEMORANDUM OPINION

This habeas proceeding arises from the trial court's imposition of criminal contempt by incarceration and punishment during a show cause hearing.[1] Because the trial court's Judgment of Criminal Contempt and Order of Attachment violates due process, it is void.

---

[1] The underlying case is *Derrick Dees v. Kevin Henry, Peter Lefevre, and Brittney Darbonne*, cause number 136646-CV, pending in the 239th District Court of Brazoria County, Texas, the Honorable Greg Hill presiding.

## Background

During the 2024 election cycle, Kevin Henry ran for Brazoria County Sheriff. He lost to the incumbent. Henry also maintained a social media presence where he highlighted purported corruption in the county. Derrick Dees is a long-time friend of the incumbent sheriff.

After his unsuccessful election bid, Henry made statements on social media that Dees considered to be defamatory. On September 10, 2025, Dees sued Henry for defamation.[2] Dees also sought a temporary restraining order (TRO) to require Henry, among other things, to delete two posts from his Facebook page—a post on April 5, 2025, and another one on September 6, 2025.[3]

About two hours after Dees filed his lawsuit, the trial court granted Dees an ex parte TRO against Henry.[4] As pertinent here, the ex parte TRO required Henry to remove the April 5 and September 6 posts from his Facebook page:[5]

---

[2] He also sued Peter Lefevre and Brittney Darbonne, who are not parties to this proceeding.

[3] The April 5, 2025 post read: "If an 'elected' sheriff exposes his genitals to a young female at a nurse's office during business hours and ½ the county knows about it while the other ½ drinks the county swamp kool-aid mixed by the District Attorney how long until he is exposed? Pardon the pun of course."

The September 6, 2025 post read: "Why does everyone keep telling me to look into Derrick Dees? Tons of messages, and pretty big allegations. Duly noted! Derrick would you like to come on my podcast?"

[4] The temporary restraining order was signed by Judge Jessica Pulcher, sitting as the ancillary judge for Judge Greg Hill.

It is therefore ORDERED that Defendants are hereby temporarily restrained and must:

a. Delete the September 6, 2025 Post on the Kevin Henry Podcast Facebook page referring to Mr. Dees;

b. Delete the April 5, 2025 Post on Kevin Henry's Facebook page referring to Bo Stallman and friends;

Henry learned of the lawsuit and the ex parte TRO two days later, on September 12, 2025. He retained legal counsel the next day—and then retained new legal counsel on September 18.

In the interim, on September 16, 2025, Dees filed an Emergency Motion for Order to Show Cause. Dees sought to hold Henry "in contempt" for not immediately removing the two Facebook posts as required by the ex parte TRO. The show cause motion was emailed to Henry's initial counsel. It was not personally served on Henry.

---

[5] The ex parte TRO also required Henry to: "Preserve all contact information and copies of all communications with third parties that touch or concern Dees; Publish a retraction letter in accordance with Tex. Civ. Rem. Code § 73.057(e), enabling Dees to distribute it 'with a prominence and in a manner and medium reasonably likely to reach substantially the same audience as the publication complained of'; Refrain from creating any similar version of the posts on Facebook or any other social media outlet; Refrain from making any statements defaming Dees in any forum, including, but not limited to, social media; Refrain from using the name Dees or Derrick Dees or any photograph or other likeness of Dees in any communication through email or social media or other forms of media except for purposes of a retraction; and Refrain from implying, insinuating, or otherwise accusing Dees of committing crimes of any nature."

Three days later, on September 19, Henry's new counsel conferred with Dee's counsel—and that resulted in Henry removing the April 5 and September 6 posts from his Facebook page.

Also, on September 19, the trial court signed an order granting Dee's emergency motion to show cause. The order was personally served on Henry and directed him to appear at the Brazoria County Courthouse on Tuesday, September 23, 2025 at 1:00 p.m.[6] to "show cause why he should not be held in contempt."

At the start of the show cause hearing, Henry and Dees informed the trial court that Henry had removed the April 5 and September 6 posts from his Facebook page and had agreed to a temporary injunction which, among other things, memorialized the deletion of those posts.[7]

Henry then moved to dismiss the contempt proceeding because he was never personally served with notice—as required by due process—of the contemptuous acts that he was accused of and that he faced the possibility of being held in criminal contempt and sentenced to incarceration and punishment during the

---

[6]     The ex parte TRO expired that same day at 11:59 p.m.

[7]     In the amended agreed temporary injunction, Henry also agreed to refrain from creating any similar version of the posts on Facebook or any other social media outlet about Dees, refrain from making any statements defaming Dees in any forum, refrain from using or referring to Dees in any communication, and refrain from implying, insinuating or otherwise accusing Dees of committing crimes of any nature.

hearing. Henry also raised constitutional issues with the TRO. The trial court overruled Henry's objections and went forward with the hearing.

At the conclusion of the show cause hearing, the trial court found Henry to be in criminal contempt for not immediately deleting the April 5 and September 6 Facebook posts as required by the ex parte TRO. It then remanded Henry into the custody of the Brazoria County Sheriff's Office for a period of 30 days and stated that monetary fines would also be imposed for failing to delete each post.[8]

The trial court signed a Judgment of Criminal Contempt and Order of Attachment the next day. It recited in relevant part as follows:

---

[8] *See* TEX. GOV'T CODE § 21.002(b) (providing contempt punishment of no more than $500 fine or confinement in county jail for not more than six months, or both fine and confinement in jail).

It is therefore **ORDERED** and **DECREED** that **Defendant Kevin Henry** is **GUILTY** of contempt of court, and his punishment is assessed as follows:

- A fine of $500.00 payable to the Court for failure to comply with Order A to delete the September 6, 2025 Post.

- A fine of $500.00 payable to the Court for failure to comply with Order B to delete the April 5, 2025 Post.

- Confinement in the county jail of Brazoria County, Texas, for a period of 30 days, for failure to comply with Order A to "Delete the September 6, 2025 Post," to run concurrently with his sentence on Order B.

- Confinement in the county jail of Brazoria County, Texas, for a period of 30 days, for failure to comply with Order B to "Delete the April 5, 2025 Post," to run concurrently with his sentence on Order A.

It is further ordered that attachment for the body of Defendant Henry issue to any sheriff or constable in Texas so Defendant Henry may be committed as ordered and this order of contempt enforced, and that all writs and other process necessary for the enforcement of this order be issued.

The following day, September 25, 2025, Henry filed an emergency habeas petition in our Court. We granted Henry temporary relief discharging him from jail upon paying a sufficient bond and pending our final determination on his petition.[9]

Henry argues that the trial court's Judgment of Criminal Contempt and Order of Attachment violates due process and is void because he was not personally served with notice before the show cause hearing of the contemptuous acts that he was accused of and that criminal incarceration and criminal

---

[9] *See* TEX. R. APP. P. 52.8(b)(3), 52.10.

6

punishment would be sought and imposed at the hearing. We agree on both counts.

## Writ of Habeas Corpus

An original habeas corpus proceeding is a collateral attack on a contempt judgment. *See Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex. 1967) (orig. proceeding). The purpose of a writ of habeas corpus is not to determine the relator's ultimate guilt or innocence, but only to determine whether the relator was afforded due process and unlawfully confined. *See Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding); *In re Morales*, No. 14-14-00265-CV, 2014 WL 2158170, at *2 (Tex. App—Houston [14th Dist.] May 22, 2014, orig. proceeding) (mem. op.).

An appellate court will issue a writ of habeas corpus if the order underlying the contempt is void or, as is the case here, the contempt order itself is void. *In re Morales*, 2014 WL 2158170, at *2. An order of contempt is void if it deprives the relator of liberty without due process or is beyond the power of the court to render. *Ex parte Barlow*, 899 S.W.2d 791, 794 (Tex. App.—Houston [14th Dist.] 1995, orig. proceeding) (citing *Ex parte Friedman*, 808 S.W.2d 166, 168 (Tex. App.—El Paso 1991, orig. proceeding)); *see also Ex parte Chunn*, 881 S.W.2d 912, 916 (Tex. App.—Houston [1st Dist.] 1994, orig. proceeding). It is the relator's burden to show the contempt order is void. *Ex parte Chunn*, 881 S.W.2d at 916.

7

## Contempt

"Contempt is strong medicine—the alleged contemnor's very liberty is often at stake—and so it should be used only as a last resort." *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding) (internal quotations omitted). "Contempt may occur in the presence of a court (direct contempt), or outside the court's presence (constructive contempt)." *Id.* at 365. When one is charged with constructive contempt, the contemnor "is always entitled to notice and a hearing in order to defend or explain the charges." *Id.*

Contempt can also be civil or criminal. Civil contempt is remedial and coercive in nature—and is conditioned on obedience with the court's order. *See id.* Civil contempt is thus the process by which a court exerts its judicial authority to compel obedience to some order of the court. *In re Wal-Mart Stores, Inc.*, 545 S.W.3d 626, 631 (Tex. App.—El Paso 2016, orig. proceeding).

Criminal contempt is punitive in nature. *In re Reece*, 341 S.W.3d at 365. It is punishment for disobeying a court order "which affronted the dignity and authority of the court." *Id.*; *In re Smith*, 981 S.W.2d 909, 911 (Tex. App.—Houston [1st Dist.] 1998, orig. proceeding).

## Notice Requirement for Criminal Contempt

The distinction between civil and criminal contempt is important from a due process and notice perspective. *See In re Moreno*, 328 S.W.3d 915, 918 (Tex.

App.—Eastland 2010, orig. proceeding). Due process demands, at a minimum, that "full and unambiguous notice of an accusation of contempt be served on the alleged contemnor in a motion for contempt, show cause order, or equivalent legal process stating how, when, and by what means the party has been guilty of the alleged contempt." *In re Blumenthal*, No. 01-21-00130-CV, 2021 WL 4848471, at *4 (Tex. App.—Houston [1st Dist.] Oct. 19, 2021, orig. proceeding) (mem. op.) (quoting *Johnson v. Clark*, No. 07-11-00122-CV, 2011 WL 5118775, at *2 (Tex. App.—Amarillo Oct. 28, 2011, no pet.) (mem. op.)).

For criminal contempt, the notice requirement is "substantially heightened." *Id.*; *In re Wal-Mart Stores*, 545 S.W.3d at 632–33; *In re Williams*, No. 11-05-00201-CV, 2005 WL 3315285, at *2 (Tex. App.—Eastland Dec. 8, 2005, orig. proceeding) (mem. op.) (party faced with criminal contempt proceedings is entitled to "heightened constitutional protections"). A party facing criminal contempt charges must receive "adequate and timely notice 'by personal service of the show cause hearing' *and* 'full and unambiguous notice' of the contempt accusations stating 'when, how, and by what means' [he] was guilty of contempt, [as well as his potential punishment], before finding [him] in contempt and sentencing [him] to jail." *In re Blumenthal*, 2021 WL 4848471, at *5 (emphasis added); *see In re Williams*, 2005 WL 3315285, at *3; *In re Moreno*, 328 S.W.3d at 918.

Stated differently, due process requires that the alleged contemnor receive written notice by personal service in advance of the contempt hearing, through a motion or show cause order, of the specific portions of the underlying order that he is accused of violating *and* that he could be subject to criminal contempt and sentenced to confinement during the hearing. *See In re Wal-Mart Stores*, 545 S.W.3d at 632; *In re Moreno*, 328 S.W.3d at 919. Notice given to the contemnor's attorney is inadequate. *In re Wal-Mart Stores*, 545 S.W.3d at 632; *In re Moreno*, 328 S.W.3d at 918.

In determining whether adequate notice has been provided, a reviewing court looks to both the motion filed by the complaining party and the show cause order issued by the trial court. *See Ex parte Vetterick*, 744 S.W.2d 598, 599 (Tex. 1988). If criminal contempt is imposed without "fully and unambiguously" satisfying these "substantially heightened" notice requirements—the criminal contempt violates due process and is void. *See In re Wal-Mart Stores*, 545 S.W.3d at 632; *In re Smith*, 981 S.W.2d at 911; *In re Gabrielova*, 527 S.W.3d 290, 295 (Tex. App.—El Paso 2016, orig. proceeding). "A denial of due process [also] occurs when the trial court grants a form of relief that was not requested." *In re Morales*, 2014 WL 2158170, at *4 (quoting *In re Radmacher*, No. 14-08-00346-CV, 2008 WL 2261278, at *3 (Tex. App.—Houston [14th Dist.] May 23, 2008, orig. proceeding) (per curiam) (mem. op.)).

10

## Discussion

There is no dispute that this case involves constructive criminal contempt by criminal incarceration and punishment. The threshold question before us is therefore whether the "notice" provided to Henry complied with the "substantially heightened" requirements demanded by due process. More specifically—was Henry personally served with notice that "fully and unambiguously" notified him of his alleged contemptuous conduct *and* that he could be subject to criminal contempt and sentenced to incarceration and punishment during the show cause hearing? A failure to provide adequate notice of either will cause a contempt judgment to be void.

Here, the motion for show cause sets out the contempt allegations against Henry and it asked the trial court to hold Henry "*in contempt*." (Emphasis added). The motion, however, was not personally served on Henry. *See Ex parte Chambers*, 898 S.W.2d at 262 ("Full and unambiguous notice of the accusation of contempt must be served on the alleged contemnor").

The trial court's show cause order was personally served on Henry. It apprised Henry of the date, time, and location of the show cause hearing, but it did not describe the alleged acts of contempt. And, like the motion for show cause, the show cause order simply stated that "the Court will consider whether to hold Kevin Henry *in contempt*." (Emphasis added).

**No Required Notice of Criminal Contempt by Incarceration and Punishment**

Our sister court has held that language in a motion requesting that a contemnor "be held in contempt, jailed, and fined for each violation alleged above"—and "be held in contempt, jailed for six months, and/or fined $500.00 for each failure to comply"—satisfies the heightened due process notice standard for criminal contempt. *See In re Morales*, 2014 WL 2158170, at *3–4; *In re Radmacher*, 2008 WL 2261278, at *3. In each instance, the motion provided unambiguous notice to the contemnor that criminal contempt by incarceration and punishment was being sought.

Importantly, our sister court has also held that a motion which merely requested that a contemnor be found "in contempt of court" failed to meet this due process standard—it did not provide adequate notice that criminal contempt is being sought. *See In re Houston*, 92 S.W.3d 870, 877 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding). Indeed, due process demands no less.

In this case, only the show cause order was personally served on Henry. And the "notice" of criminal contempt that the trial court provided to Henry is similar to the deficient notice in *In re Houston*. Henry was informed only that he was subject to being held "in contempt."

But Henry was not "fully and unambiguously" notified before the show cause hearing—like that provided in *Morales*[10] and *Radmacher*[11]—that the trial court might impose criminal incarceration and punishment against him during the hearing. Thus there was no pleaded basis by which the trial court could hold Henry in criminal contempt, yet it still did. *See In re Smith*, 981 S.W.2d at 911 (contempt order void because in granting criminal contempt punishment that was not pled, trial court violated due process).

Henry's due process rights were therefore violated. *See In re Blumenthal*, 2021 WL 4848471, at *4; *In re Williams*, 2005 WL 3315285, at *3; *see also In re Morales*, 2014 WL 2158170, at *2 ("A denial of due process [also] occurs when the trial court grants a form of relief that was not requested."). And, on this basis alone, the trial court's Judgment of Criminal Contempt and Order of Attachment is void.

**No Required Notice of Contemptuous Conduct**

The trial court's Judgment of Criminal Contempt and Order of Attachment is additionally void because Henry was also not personally served with notice before

---

[10] *In re Morales*, No. 14-14-00265-CV, 2014 WL 2158170, at *3–4 (Tex. App.—Houston [14th Dist.] May 22, 2014, orig. proceeding) (mem. op.).

[11] *In re Radmacher*, No. 14-08-00346-CV, 2008 WL 2261278, at *3 (Tex. App.—Houston [14th Dist.] May 23, 2008, orig. proceeding) (per curiam) (mem. op.).

13

the hearing of his alleged contemptuous conduct.[12] *See In re Blumenthal*, 2021 WL 4848471, at *4–5.

The show cause order was personally served on Henry—but it makes no mention of the contempt allegations against him. The motion for show cause is the only document in this record that describes the contempt allegations against Henry—but it was not personally served on him as required by due process. *See Ex parte Chambers*, 898 S.W.2d at 262.

As a result, Henry's due process rights were again violated for this further reason. And a contempt judgment rendered without such notification by personal service is void.[13] *In re Blumenthal*, 2021 WL 4848471, at *5; *see also Ex parte Vetterick*, 744 S.W.2d at 599; *In re Powers*, No. 01-21-00466-CR, 2022 WL 16640631, at *4 (Tex. App.—Houston [1st Dist.] Nov. 3, 2022, orig. proceeding)

---

[12]   *In re Acevedo*, No. 13-05-335-CR, 2005 WL 1714310, at *2 (Tex. App.—Corpus Christi July 22, 2005, orig. proceeding) (per curiam) (mem. op., not designated for publication) ("Show cause notices must advise the alleged contemnor of the specific acts of contempt and provide notice that criminal confinement and a criminal penalty will be sought as punishment.").

[13]   Dees also argues that Henry waived any notice issues because Henry had previously agreed to attend the show cause hearing. But Dees' waiver argument is not supported by the record. Indeed, Henry specifically made clear at the start of the hearing that "we don't waive and I'm not agreeing to waive any due process requirements." Then, throughout the hearing, Henry repeatedly and strenuously objected to the hearing going forward on due process grounds because he had not received any advance notice that criminal contempt would be imposed. And Henry's objections were overruled by the trial court. Accordingly, based on this record, we disagree that Henry waived any of his due process rights to receive adequate and proper notice of his criminal contempt charges and sentencing.

(mem. op., not designated for publication); *see also Ex parte Pink*, 645 S.W.2d 262, 264–65 (Tex. Crim. App. 1982) (contempt judgment void when show cause order insufficient to inform petitioner of accusations against him).[14]

## Conclusion

Accordingly, for all of these reasons, we hold that the trial court's Judgment of Criminal Contempt and Order of Attachment, signed September 24, 2025, in this case is void. We therefore grant Henry's petition for writ of habeas corpus, and we discharge Henry from the obligations contained in the trial court's Judgment of Criminal Contempt and Order of Attachment in all things. *See* TEX. R. APP. P. 52.8(c).

Terry Adams<br>Chief Justice

Panel consists of Chief Justice Adams and Justices Gunn and Johnson.

---

[14] Because the trial court's contempt judgment is void, it is unnecessary to address Henry's remaining constitutional arguments. *See* TEX. R. APP. P. 47.1; *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003) ("As a rule, we only decide constitutional questions when we cannot resolve issues on nonconstitutional grounds.").

15