**Opinion issued October 19, 2021**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-21-00130-CV**

———————————

**IN RE ERICA BLUMENTHAL, Relator**

---

**Original Proceeding on Petition for Writ of Habeas Corpus**

---

## MEMORANDUM OPINION

Relator Erica Blumenthal seeks habeas relief from a criminal contempt order issued by Respondent, the Honorable Barbara Stalder, sentencing Relator to six months in jail for violation of a protective order.[1]  We grant the writ of habeas corpus.

---

[1]  The underlying case is *Jeff Scott Blumenthal v. Erica Blumenthal*, Cause No. 2020-62226, pending in the 280th District Court of Harris County, Texas, the Honorable Barbara Stalder presiding.

## Background

Relator and Real Party in Interest Jeff Blumenthal ("Real Party") are divorced. They have one child, a minor. On September 11, 2020, the family trial court entered temporary orders. One month later, Respondent held a hearing to consider Real Party's application for a protective order.[2] On October 23, 2020, Respondent entered a Protective Order ("Protective Order") against Relator stating:

> It is therefore ORDERED that the Respondent, ERICA BLUMENTHAL, pursuant to chapter 85 of the Family Code, is hereby immediately prohibited from:
>
> (a) Committing family violence against JEFF SCOTT BLUMENTHAL AND [the minor];
>
> (b) Communicating directly with JEFF SCOTT BLUMENTHAL in any manner except through his/her attorney of record or a person appointed by the Court[;]
>
> (c) Communicating directly with [the minor] in a threatening or harassing manner; Respondent is order[ed] to abide by orders granted in the 257th District Court regarding communication, access, and possession of [the minor];
>
> (d) Communicating a threat through any person to JEFF SCOTT BLUMENTHAL and [the minor];
>
> (e) Going to or near the residence or place of employment or business of JEFF SCOTT BLUMENTHAL and [the minor] . . . ;
>
> (f) Possessing a firearm, unless the person is a peace officer . . . ;

---

[2] The Harris County District Attorney's office represented Real Party during the hearing. Relator appeared pro se.

(g) Engaging in conduct directed specifically toward JEFF SCOTT BLUMENTHAL and [the minor], including following JEFF SCOTT BLUMENTHAL and [the minor], that is likely to harass, annoy, alarm, abuse, torment, or embarrass JEFF SCOTT BLUMENTHAL and [the minor];

(h) Harming, threatening, or interfering with the care, custody, or control of a pet, companion animal, or assistance animal . . . that is possessed by a person protected by an order or by a family member of the family or household of a person protected by an order;

(i) Going to or near the child care facility or school of [the minor], specifically prohibit [sic] the Respondent from coming within 200 feet of [the minor's school] . . . .

IT IS FURTHER ORDERED THAT Respondent submit to a psychiatric evaluation with The Harris Center. Respondent is ordered to make an appointment for the psychiatric evaluation no later than 5 p.m. on November 13, 2020. Respondent is ordered to submit her full report and treatment plan recommendations to this Court within seven (7) days of obtaining the report and treatment recommendations. Respondent is ordered to follow all treatment advice, plan, or regime as provided by The Harris Center.

IT IS FURTHER ORDERED THAT Respondent appear before this Court, the 280th District Court, **via Zoom, on January 18, 2021 at 9 a.m.**, to show compliance with the psychiatric evaluation orders herein or to show good cause why Respondent was unable to comply. . . .

(Emphasis in original.)

On January 20, 2021, Respondent conducted a "compliance hearing." Relator, appearing pro se, informed the Court during the hearing that she had yet to have a psychiatric evaluation. Respondent reset the compliance hearing for January 27, 2021 and later for February 3, 2021 "in order to allow [Relator] to be present in court."

3

Respondent subsequently conducted a "show cause" hearing on March 10, 2021. Relator, who appeared with counsel, testified that she had tried unsuccessfully to get an appointment for evaluation at The Harris Center,[3] and that she had sought the services of two other mental health providers. She admitted sending voicemails and emails to Real Party and their minor child in violation of the Protective Order. Respondent found Relator guilty of criminal contempt for violating the Protective Order. Respondent sentenced Relator to six months in jail and ordered her to report for incarceration forty-eight hours later.

Respondent entered her "Order Holding Respondent in Contempt for Violating Protective Order" ("Contempt Order") on March 12, 2021. The Contempt Order, which referred to violations of both the Protective Order and the Temporary Protective Order, sentenced Relator to six months in jail for each violation, to run concurrently. Respondent also ordered Relator to pay Real Party $4,375 in attorney fees. On the same day, Relator filed her application for habeas relief challenging the Contempt Order. Upon Relator's request, this Court stayed the Contempt Order pending resolution of the application.

Relator asserts the Contempt Order is void because she "was ordered to appear for a compliance hearing that became a criminal contempt proceeding," resulting in her sentence of six months' confinement, "without being personally

---

[3] Relator testified she did not meet the criteria for evaluation at The Harris Center.

served with either a motion filed by the Real Party or a show cause order or any other similar court order setting out with the requisite specificity how and when she allegedly violated the terms and conditions of Respondent's Order." Real Party responds Relator had notice that she could be incarcerated for violating Respondent's Protective Order and thus the Contempt Order is valid.[4]

## Discussion

Texas law recognizes that contempt may be direct or constructive. *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding). Direct contempt occurs in the presence of a trial court, while constructive contempt occurs outside the presence of the trial court, such as when a party violates a court's order. *Id; In re Wal-Mart Stores, Inc.*, 545 S.W.3d 626, 631 (Tex. App.—El Paso 2016, orig. proceeding). Real Party alleged Relator violated the Protective Order outside the presence of the court. Thus, this matter involves an order for constructive contempt.

---

[4] Despite this Court's request, Real Party did not file a response to Relator's application. On August 3, 2021, this Court requested that the parties file a status report. Real Party filed his status report raising the notice arguments and attaching several documents to the report. The documents attached to Real Party's status report are not properly before this Court. *See* TEX. R. APP. P. 52.3(k)(1) (stating appendix must contain "a certified or sworn copy of any order complained of, or any other document showing the matter complained of."); 52.6 (stating record must contain "certified or sworn copy of every document that is material to the relator's claim for relief and that was filed in any underlying proceeding" and "a properly authenticated transcript of any relevant testimony from any underlying proceeding"). Even were we to consider them, our disposition of this matter would remain the same.

5

Constructive contempt may be civil or criminal. *Id.* Civil contempt "is the process by which a court exerts its judicial authority to compel obedience to some order of the court" and contemplates confinement conditioned on compliance with the court's order. *Id.* Criminal contempt is punitive and punishes the contemnor "for some completed act which affronted the dignity and authority of the court." *Id.* (quoting *In re Reece*, 341 S.W.3d 360, 370 (Tex. 2011)). "Criminal contempt orders generally require the individual to be incarcerated for a finite period and that period is unaffected by the individual's performance of any future act." *Ex parte Hayes*, No. 05-17-00473-CV, 2017 WL 2889047, at *3 (Tex. App.—Dallas July 7, 2017, orig. proceeding). The Contempt Order here involves punishment for past violations of the Protective Order. Thus, this habeas matter involves an order for constructive criminal contempt.

## Standard for Granting Habeas Corpus Relief

"An original habeas corpus proceeding is a collateral attack on a contempt judgment." *Ex parte Barlow*, 899 S.W.3d 791, 794 (Tex. App.—Houston [14th Dist.] 1995, orig. proceeding). A habeas corpus proceeding is not intended as a vehicle to determine the relator's ultimate guilt or innocence but is meant only to determine whether the relator was unlawfully confined. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding).

6

A conviction for criminal contempt for disobedience of a court order "requires proof beyond a reasonable doubt of: (1) a reasonably specific order; (2) a violation of the order; and (3) the willful intent to violate the order." *Ex parte Chambers*, 898 S.W.2d at 259. If an order of contempt deprives the relator of liberty without due process or is beyond the power of the court to enter it, the order is void. *Ex parte Barlow*, 899 S.W.3d at 794 (citing *Ex parte Friedman*, 808 S.W.2d 166, 168 (Tex. App.—El Paso 1991, orig. proceeding)); *see also Ex parte Chunn*, 881 S.W.2d 912, 916 (Tex. App.—Houston [1st Dist. 1994, orig. proceeding). If the order underlying the contempt or the contempt order itself is void, the court of appeals will issue a writ of habeas corpus. *Ex parte Barlow*, 899 S.W.3d at 794. It is the relator's burden to show the contempt order is void. *Ex parte Chunn*, 881 S.W.2d at 916. The order "is presumed to be valid until a relator has discharged her burden of showing otherwise." *In re Parr*, 199 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding).

### The Contempt Order

The Contempt Order, signed on March 12, 2021, states that "on at least one occasion," Relator "failed to comply with provision (b) on page 2 of the [October 23, 2020] Protective Order and further finds that Respondent admitted such under oath" and that "on at least one occasion," Relator "failed to comply with provision (c) of page 2 of the Protective Order by contacting [the minor] in a manner

inconsistent and contrary with the terms provided in the 257th District Court's Temporary Order signed on September 11, 2020 and that such communication was threatening and harassing." The Court found that Relator "admitted such under oath."

The oral finding of contempt was more expansive. Respondent stated that Relator was in contempt because she directly emailed Real Party, she communicated with her son "in a threatening or harassing manner," and she did not follow Respondent's order regarding her submission to a psychiatric evaluation.

**Analysis**

The threshold issue is whether Relator was given sufficient notice of the March 10, 2021 criminal contempt hearing resulting in her ordered incarceration. Due process requires an alleged contemnor

> be given "full and complete notification" and a reasonable opportunity to meet the charges by way of defense or explanation. As such, the court must issue a valid show cause order or equivalent legal process apprising the contemnor of the accusation. A contempt judgment rendered without such notification is a nullity.

*Ex parte Gordon*, 584 S.W.2d at 688 (internal citations omitted) (finding contempt order void because show cause order referred to temporary restraining order but contempt finding pertained to temporary injunction). Put another way, "[d]ue process requires that full and unambiguous notice of an accusation of contempt be served on the alleged contemnor in a motion for contempt, show cause order, or

8

equivalent legal process stating how, when, and by what means the party has been guilty of the alleged contempt." *Johnson v. Clark*, No. 07-11-00122-CV, 2011 WL 5118775, at *2 (Tex. App.—Amarillo Oct. 28, 2011, no pet.) (citations omitted). This Court has held that even an order setting a compliance hearing does not satisfy the due process requirement:

> Because relator was not personally served with a show cause order or equivalent legal proceeding charging him with contempt for his failure to comply with the order to pay the insurance by March 15, and to pay the $500 fine by May 9, a judgment holding him in contempt for such failure, and punishing him for such failure, is a nullity. The order setting a compliance hearing is not a valid substitute for the notice required by due process.

*Ex parte Chunn*, 881 S.W.2d at 917 (internal citations omitted). Indeed, the notice requirement in a criminal contempt matter is "substantially heightened." *In re Wal-Mart*, 545 S.W.3d at 632. There must be "timely notice by personal service of the show cause hearing, and full and unambiguous notice of the contempt accusations." *In re Warrick*, No. 08-13-00255-CR, 2014 WL 2466105, at *6 (Tex. App.—El Paso May 30, 2014, orig. proceeding). "Notice must be in writing and personally served on the contemnor; notice given to the attorney is inadequate." *Id.* Further, "constructive notice of the contempt hearing or contempt allegations is constitutionally inadequate." *Id.*; *In re Wal-Mart*, 545 S.W.3d at 633.

In re Wal-Mart is instructive. The relators in *In re Wal-Mart* were found guilty of criminal contempt for violating an order compelling discovery

9

production. 545 S.W.3d at 629–30. Respondent issued three distinct contempt orders against the relators in connection with the single discovery order and assessed fines as punishment in connection with each contempt finding. *Id.* at 630. But the real parties in interest never filed a motion for contempt,[5] and the only so-called notice the relators received of the contempt hearing was an order by the trial court setting a "show cause hearing" for relators' attorneys. *Id.*[6] The court of appeals held the "'notice' issued by Respondent completely failed" to satisfy the requirements of "timely notice by personal service of the show cause hearing, and full and unambiguous notice of the contempt accusations" that states in writing "when, how, and by what means the person has been guilty of contempt." *Id.* at 632 (citing *In re Warrick*, 2014 WL 2466105 at *6).

Similarly, a motion for enforcement or contempt was not filed in this case, and neither was a show cause order. Attorney Dawn Archer, whose firm represents Relator in the trial court, testified via affidavit that no motion had been filed since the October 2020 application for a protective order, no show cause

---

[5] In *In re Wal-Mart Stores, Inc.*, the real parties in interest filed a letter with the court advising that the relators had violated the discovery order and requested a hearing. 545 S.W.3d 626, 629–30 (Tex. App.—El Paso 2016, orig. proceeding). The court of appeals rejected the real parties in interest's argument that the relators, who attended the hearing through counsel and defended against the allegations, had constructive notice of the contempt hearing. *Id.* at 632.

[6] The "show cause" hearing pertained to the first contempt order. *Id.* at 630. There apparently was no warning or notice before the second contempt order. The third contempt order was signed after a hearing on the real parties in interest's motion to compel. *Id.*

orders were issued by the trial court, and no motion had been filed by or on behalf of Real Party that would provide Relator with notice that the March 10, 2021 hearing would be a criminal contempt proceeding.

Real Party does not assert he filed a motion for contempt or enforcement. He instead argues Relator "was provided complete notification and a reasonable opportunity to address her compliance with the protective order as it pertains to the order to obtain a psychiatric or psychological evaluation and file said evaluation with the trial court within a specific timeframe." Real Party states:

> It is clear that Relator had actual knowledge of the protective order and read the protective order itself at least two times. Relator had actual knowledge of the compliance hearing as she was present in court and representing herself pro se when Respondent announced the setting for the compliance hearing in Court. [Relator] had actual notice [] that the purpose [] of the compliance hearing was to show her compliance with the psychiatric evaluation orders contained in the protective order or to show good cause why she was not able to comply because the protective order directly stated this and by Relator's own admission, she read the protective order.

The question before us, however, is not "the clarity of the court's underlying order" or Relator's notice of her obligations under the Protective Order. *See In re Moreno*, 328 S.W.3d 915, 918 (Tex. App.—Eastland 2010, no pet.). The question is whether the trial court gave Relator adequate and timely notice "by personal service of the show cause hearing" and "full and unambiguous notice" of the contempt accusations stating "when, how, and by what means" she was guilty of

11

contempt before finding her in contempt and sentencing her to jail for six months. On the record before us, we find the trial court failed to do so.

The record lacks any indication Relator was advised before the hearing through a motion or show-cause order of the specific portions of the Protective Order she violated or that she could be sentenced to confinement during the March 10, 2021 hearing. Assuming *arguendo* Respondent admonished Relator during a previous hearing[7] that she could be incarcerated for violating the Protective Order, such notice would not constitute a "valid show cause order or equivalent legal process apprising the contemnor of the accusation" against her.[8] *See Ex parte Gordon*, 584 S.W.2d at 688. Given the absence of a "sufficiently specific motion requesting that an order be enforced by contempt" or some other manner of "full and complete notification of the subject matter and 'when, how, and by what means [Relator] has been guilty of the alleged contempt,'" the Contempt Order is void. *See In re Rogers*, No. 12-12-00395-CV, 2012 WL 6707723, at \*2 (Tex.

---

[7] The transcript of the March 10, 2021 hearing reflects the Court indicated during a January 20, 2021 "compliance" hearing that "it needed to have a show cause at that time," and that it was scheduled for January 27, 2021, reset to February 3, 2021, and ultimately reset to March 10, 2021.

[8] Allowing notice of a compliance hearing in a protective order to serve as legally sufficient, due-process-compliant notice of a contempt hearing for potential future violations of the order would enable trial courts to circumvent the notice requirements imposed by the Texas courts in *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding), *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding), and their progeny.

App.—Tyler Dec. 21, 2012, orig. proceeding) (citing *Ex parte Edgerly*, 441 S.W.2d 514, 516 (Tex. 1969) (orig. proceeding)).

## Conclusion

We hold the March 12, 2021 contempt order is void. We grant Relator's petition for writ of habeas corpus and vacate Respondent's criminal contempt order. We lift the stay imposed on March 12, 2021. All pending motions are dismissed as moot.

## PER CURIAM

Panel consists of Chief Justice Radack and Justices Rivas-Molloy and Guerra.